UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOHN JONES                                              CIVIL ACTION

VERSUS                                                  No. 08-3879

COOPER/T. SMITH STEVEDORING COMPANY, INC.               Section I/5


ORDER AND REASONS

Before the Court is a motion for summary judgment filed by defendant, Cooper/T. Smith Stevedoring Company, Inc. ("Cooper"), seeking dismissal of the above-captioned matter on the ground that plaintiff does not qualify as a seaman under the Jones Act. For the following reasons, Cooper's motion for summary judgment is **GRANTED.**

BACKGROUND

On or about March 13, 2008,[1] a Cooper representative hired plaintiff, John Jones ("Jones"), from the Longshoreman Local Union "shapeup" yard in Darrow, Louisiana to assist in unloading cargo from an ocean-going ship located offshore in the Mississippi River.[2] The ship's cargo was transferred by the crane of a Cooper-

---

[1] Plaintiff alleges that he was hired on March 13, 2008 while Cooper states in its memorandum that plaintiff was hired on March 14, 2008. An email attached to a deposition of a designated Cooper representative indicates that plaintiff unhooked cargo for Cooper on March 13, 2008. Rec. Doc. No. 17-3, p. 13.
  Deposition testimony of the Cooper representative also indicates that plaintiff had worked "periodically" from December 30, 2007 to March 15, 2008. Rec. Doc. No. 17-3, pp. 2-4

[2] Rec. Doc. No. 15-3, paras. 1, 2; Rec. Doc. No. 17, p. 2, para. 2.

1

owned derrick barge to an adjacent cargo barge.[3] Jones was assigned to unhook cargo from the derrick barge crane while he remained in the hold of the cargo barge.[4] Jones did not operate the crane aboard the derrick barge nor was he assigned to perform any duties aboard the derrick barge.[5] All three vessels, i.e., the ocean-going ship, the derrick barge, and the cargo barge, were located in the Mississippi River.[6]

On March 15, 2008, Jones was injured when he was struck by cargo while working aboard the cargo barge.[7] Jones filed this lawsuit against Cooper pursuant to the General Maritime Law and the Jones Act, alleging that the barge upon which he was working was unseaworthy[8] and that Cooper was negligent in failing to provide a safe place to work, failing to properly supervise the task, and

---

[3] Rec. Doc. No. 17-4, pp. 17-20; Rec. Doc. No. 17-3, p. 9.

[4] Rec. Doc. No. 15-3, para. 3; Rec. Doc. No. 17, p. 3, paras. 8, 9; Rec. Doc. No. 17-3, p. 13; Rec. Doc. No. 17-4, pp. 26-28.

[5] Rec. Doc. No. 17-4, p. 28.

[6] Rec. Doc. No. 17-4, pp. 14-16; Rec. Doc. No. 17-3, p. 27; Rec. Doc. No. 17-5, p. 7.

[7] Rec. Doc. No. 1, para. 4; Rec. Doc. No. 15-3, paras. 4-5.

[8] Rec. Doc. No. 1, paras. 3,7,8. It is unclear from plaintiff's complaint whether he alleges the unseaworthiness of the derrick barge or the cargo barge. Plaintiff's complaint alleges that "[a] proximate cause of the accident was the unseaworthiness of defendant's barge." Rec. Doc. No. 1, para. 7. Plaintiff also alleges that Cooper owned, controlled, and/or operated the barge on which he was working. Rec. Doc. No. 1, para. 2. Cooper, however, contends that it does not own the barge that plaintiff worked aboard. Rec. Doc. No. 15-2, p. 7.

failing to operate the crane in a reasonably safe manner.[9] Jones also claims that he is entitled to maintenance and cure payments.

Cooper filed this motion for summary judgment, arguing that plaintiff cannot recover under the Jones Act. Cooper contends that Jones, who it hired as a barge holdsman/longshoreman, does not qualify as a seaman.

<b><u>LAW AND ANALYSIS</u></b>

**I. <u>STANDARD OF LAW</u>**

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 266, 274 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553, 91 L. Ed. 2d at 274; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986). If, on the other hand,

---

[9] Rec. Doc. No. 1, para.6.

the moving party bears the burden of proof on an issue, it "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot*, 780 F.2d at 1194.

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 211-12 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255, 106 S. Ct. at 2513, 91 L. Ed. 2d at 216; *see Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S. Ct. 1545,

1551-52, 143 L. Ed. 2d 731, 741 (1999).

II. **SEAMAN STATUS**

The Jones Act provides a cause of action for "[a]ny seaman who shall suffer personal injury in the course of his employment," 46 U.S.C. App. §688. The United States Supreme Court initially defined the Jones Act's use of the term seaman to require that "an employee's duties must 'contribut[e] to the function of the vessel or to the accomplishment of its mission.'" *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 355, 111 S. Ct. 807, 817, 112 L. Ed. 2d 866 (1991)(quoting *Offshore Co. v. Robison*, 266 F.2d 769, 779 (5th Cir. 1959)).[10] The Court subsequently added the requirement that "a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and nature." *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368, 115 S. Ct. 2172, 2190, 132 L. Ed. 2d 314 (1995). The *Chandris* Court explained the second requirement as follows:

> 'the total circumstances of an individual's employment must be weighed to determine whether he had a sufficient relation to the navigation of the vessels and the perils attendant thereon.' The duration of the worker's connection to a vessel and the nature of the worker's activities taken together determine whether a maritime employee is a seaman because the ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on a vessel at a given time.

---

[10] The Court clarified that an employee need not "aid in navigation or contribute to the transportation of the vessel" to qualify as a seaman. *Wilander*, 498 U.S. at 355, 111 S. Ct. at 817.

*Chandris*, 515 U.S. at 370, 115 S. Ct. at 2190-91 (quoting *Wallace v. Oceaneering Int'l*, 727 F.2d 427, 432 (5th Cir. 1984)).[11]

Qualifying as a seaman under the Jones Act hinges on an employee's status in relation to a vessel rather than on the nature or location of the injury. *Id.* at 359-63, 115 S. Ct. at 2185-88. "Land-based maritime workers do not become seamen because they happen to be working on board a vessel when they are injured, and seaman do not lose Jones Act protection when the course of their service to a vessel takes them ashore." *Id.* at 361, 115 S. Ct. at 2186.

Because the Longshore and Harbor Workers' Compensation Act ("LHWCA") provides compensation for injured land-based maritime workers while specifically excluding "master[s] or member[s] of a crew," 33 U.S.C. 902(3)(G), the Supreme Court has held that the LHWCA and Jones Act are mutually exclusive. *Chandris*, 515 U.S. at 355-56, 115 S. Ct. at 2183-84. However, the fact that an employee performs a job specifically enumerated in the LHWCA does not foreclose the possibility that the individual qualifies as a Jones

---

[11] The Fifth Circuit has stated as a general rule of thumb that in order to qualify as a Jones Act seaman, an employee should demonstrate that at least thirty percent of his work is spent in service of a vessel in navigation. *Roberts v. Cardinal Servs., Inc.*, 266 F.3d 368, 375 (5th Cir. 2001). The Supreme Court approved of this benchmark, but clarified it as "no more than a guideline established by years of experience, and departure from it will certainly be justified in appropriate cases. As we have said, "[t]he inquiry into seaman status is fact specific ; it will depend on the nature of the vessel and the employee's precise relation to it." *Chandris,* 515 U.S. at 371, 115 S. Ct. at 2191 (quoting *Wilander*, 498 U.S. at 356, 111 S. Ct. at 818).

Act seaman. *See Chandris*, 515 U.S. at 363, 115 S. Ct. at 2187; *Southwest Marine, Inc. v. Gizoni*, 502 U.S. 81, 89, 112 S. Ct. 486, 492, 116 L. Ed. 2d 405 (1991)("'It is not the employee's particular job that is determinative, but the employee's connection to a vessel.'" (quoting *Wilander*, 498 U.S. at 354, 111 S. Ct. at 817)).

The inquiry into seaman status is a mixed question of law and fact and, therefore, "it will often be inappropriate to take the question from the jury." *Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 554, 117 S. Ct. 1535, 1540, 137 L. Ed. 2d 800(1997). "Nevertheless, 'summary judgment or a directed verdict is mandated where the facts and the law will reasonably support only one conclusion." *Id.* (quoting *Wilander*, 498 U.S. at 356, 111 S. Ct. at 818). "'When the underlying facts are established, and the rule of law is undisputed, the issue is whether the facts meet the statutory standard.'" *Wilander*, 498 U.S. at 356, 111 S. Ct. at 818.

### A. Contribution to Vessel's Function

With respect to the first requirement for seaman status, Cooper argues that Jones cannot show that he contributed to the function of any vessel owned, operated or controlled by Cooper because neither the ocean-going vessel that he unloaded nor the barge on which he worked are owned by Cooper.[12]

---

[12] Cooper alleges that "the barges and ships [Jones] worked aboard while unloading were not owned, operated, or controlled by Cooper." Rec. Doc. No. 15-2, p. 7. While deposition testimony suggests that Cooper did not own the ocean-going vessel that was being unloaded, Cooper does not submit any evidence that it did not own the barge from which plaintiff worked.

7

Cooper is correct that the vessel or fleet of vessels to which plaintiff establishes a connection must be "'under common ownership or control.'" *See Harbor Tug*, 520 U.S. at 556, 117 S. Ct. at 1541(quoting *Chandris*, 515 U.S. at 366, 155 S. Ct. at 2189). However, Jones' position on the cargo barge and his role in the unloading of cargo from the ocean-going vessel do not necessarily demonstrate that he did not contribute to the function of a Cooper-owned vessel.

Plaintiff submits deposition testimony and attached exhibits supporting the fact that he worked in the hold of the cargo barge, unhooking cargo from the crane of the derrick barge, the DENISE M., from March 13, 2008 until March 15, 2008.[13] Deposition testimony also indicates that although the ocean-going vessel, the MASS ENTERPRISE, may have been owned by another entity,[14] Cooper owned the derrick barge.[15] In light of this evidence, a reasonable jury could conclude that Jones contributed to the function of the Cooper-owned derrick barge by unhooking cargo from its crane. *See Becker v. Tidewater, Inc.*, 335 F.3d 376, 387-88 (5th Cir. 2003) ("[S]atisfying the first prong of the test is relatively easy: the

---

[13] Rec. Doc. No.17-3, pp. 9,13; Rec. Doc. No. 17-4, pp. 17-18.

[14] Rec. Doc. No. 17-3, p. 11.

[15] Rec. Doc. No. 17-3, p. 9 (Q....then we come to the DENISE M, which is owned by Cooper as well, correct? A. Yes, sir. Q. And he's told us what he was doing on that occasion. He's in the hold of the barge receiving the cargo that's being taken from the MASS ENTERPRISE and moved by the crane on the DENISE M over to the barge? A. Yes, sir."); Rec. Doc. No. 17-5, p. 2.

claimant need only show that he 'do[es] the ship's work.'" (quoting *Chandris*, 515 U.S. at 368, 115 S. Ct. at 2172)).

   B. **Substantial Connection**

Plaintiff's status as a seaman turns on the second prong of the *Chandris* test, which requires a substantial connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and nature." *Chandris,* 515 U.S. at 368, 115 S. Ct. at 2190. The Supreme Court explained:

> 'The fundamental purpose of th[e] substantial connection requirement is to give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection with a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea.'

*Harbor Tug*, 520 U.S. at 555, 117 S. Ct. 1540 (quoting *Chandris*, 515 U.S. at 368, 115 S. Ct. at 2190). As such, "[f]or the substantial connection requirement to serve its purpose, the inquiry into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties take him to sea." *Id.*

In *Harbor Tug,* the Supreme Court held that a plaintiff, who was hired from a union hiring hall to paint a dockside tug boat for only one day, had the "the sort of 'transitory or sporadic' connection to a vessel or group of vessels that...does not qualify one for seaman status." *Id.* at 560 (quoting *Chandris*, 515 U.S. at

9

368, 115 S. Ct. at 2190). The Court explained that the plaintiff was not "hired to perform seagoing work." *Id.* at 559.

Jones attempts to distinguish this case from *Harbor Tug* by arguing that his work was never confined to shore-side activities. Instead, he submits evidence that he had to ride a crew boat to the location of both the derrick barge and cargo barge in the Mississippi River.[16]

However, the fact that Jones was located on the Mississippi River is not necessarily determinative of his status. Although "Jones Act coverage is confined to seaman, those workers who face regular exposure to the perils of the sea," the mere fact of offshore work does not end the analysis. *Id.* at 1542 "An important part of the test for determining who is a seaman is whether the injured worker seeking coverage has a substantial connection to a vessel...." *Id.; In re Endeavor Marine, Inc.*, 234 F.3d 287, 291 (5th Cir. 2000) ("First, the *Harbor Tug* Court stated that the determination whether the claimant went to sea was only 'helpful' in determining whether he has the requisite connection to the vessel." (quoting *Harbor Tug*, 520 U.S. at 555, 117 S. Ct. at 1535)); *see Moore v. AEP Memco LLC*, Nos. 07-1353, 07-2650, 07-2760, 2008 WL 3851574, at * (E.D. La. Aug. 13, 2008) (Vance, J.)(finding plaintiffs who rode crew boats to barges offshore in the

---

[16] Rec. Doc. No. 17-4, pp. 14-16; Rec. Doc. No. 17-3, p. 27; Rec. Doc. No. 17-5, p. 7.

Mississippi River lacked substantial connections to the employer-owned derrick barge).

In *Endeavor Marine*, the Fifth Circuit considered the fact that a crane operator of a derrick barge in the Mississippi River was "regularly exposed to the perils of the sea" in concluding that he was a seaman as a matter of law. 234 F.3d at 292. However, the court's determination was not based solely on his offshore location. Instead, the Fifth Circuit considered numerous factors to hold that plaintiff had a substantial connection to the derrick barge. The Fifth Circuit noted that the plaintiff in *Endeavor Marine* was permanently assigned to the derrick barge, spent nearly all of the eighteen months prior to the accident on the barge, and "his primary responsibility was to operate the cranes on board a vessel whose sole purpose is to load and unload cargo vessels." *Id.* at 292.

Notwithstanding evidence of his offshore location,[17] plaintiff does not come forward with evidence of a connection to the derrick barge that is nearly as substantial as the crane operator's connection in *Endeavor Marine*. Jones did not operate the derrick

---

[17] Rec. Doc. No. 17-5, p. 7. Plaintiff submits evidence that he rode crew boats to the location of the barge in the Mississippi River. Rec. Doc. No. 17-4, p. 16.
The fact that Jones wore safety equipment does not necessarily establish that he was exposed to the perils of the sea. In fact, deposition testimony indicates that he wore safety goggles and hard hats due to the heavy loads on the barge. Rec. Doc. No. 15-6, p. 8; Rec. Doc. No. 17-3, p. 25 ("[W]e just, you know, tell them things to watch out for...as far as like there are bags overhead, don't stand over a load coming over your head....").

barge's crane.[18] Nor was he one of the employees assigned to the derrick barge.[19] Instead, he submits evidence that he worked for three days on an adjacent barge, unhooking cargo from the derrick barge's crane.[20] The evidence further indicates that Jones was hired on an "as-needed"[21] basis from a union hiring hall, which meant that once he completed the work, his employment would terminate.

Plaintiff does not direct the Court to any cases which hold that this type of work, i.e., assisting with the loading or unloading process, creates a connection that is substantial in nature. Indeed, other sections of this Court have recently found otherwise, rejecting seaman status where employees' only connection to a subject vessel was the loading or unloading of cargo.[22] *See,*

---

[18] Rec. Doc. No. 17-4, p. 28. Plaintiff's actual duties on the derrick barge did not include any seagoing activity. *See Harbor Tug*, 520 U.S. at 558-59, 117 S. Ct. at 1542.

[19] Rec. Doc. No. 17-4, p. 28. According to deposition testimony, the crew on the derrick barge included an oiler, utility man, and crane operator. Rec. Doc. No. 15-7, pp. 7-8. Moreover, Jones was not identified in a document that listed employees assigned to work on the DENISE M. Rec. Doc. No. 15-9.

[20] Rec. Doc. No. 17-4, pp. 12-14. Although plaintiff cites five prior occasions where Cooper hired him for one to three days to assist in the loading or unloading of cargo from vessels in the Mississippi River, the Court will limit its analysis to the single employment at issue as the Supreme Court did in *Harbor Tug*. 520 U.S. at 560, 117 S. Ct. at 1542("In any event, these discrete engagements were separate from the one in question, which was the sort of 'transitory or sporadic' connection to a vessel or group of vessels...."). Nonetheless, plaintiff does not submit any evidence that he was ever assigned to work aboard the derrick barge.

[21] Rec. Doc. No. 15-10, p. 3 ("Q. That may be for a day. It may be several days. It may be a week. But he's only hired as-needed; is that fair? A. He is hired each day as-needed.").

[22] The Court notes that it is not swayed by plaintiff's job title alone, but instead considers his connection to a vessel in navigation.

*e.g., Bridges v. Standard Concrete Prods.*, Nos. 07-3897, 07-4301, 2008 WL 4831701 (E.D. La. Nov. 6, 2008)(Berrigan, J.)(finding that loading girders on a vessel did not create a substantial connection to the vessel particularly when plaintiff "never performed maintenance of the vessel, never slept or inhabited the vessel, [and] never sailed more than a few feet"); *Moore*, 2008 WL 3851574, at *5.

In *Moore*, the Court found that plaintiffs, who were located on cargo barges, had only a "transitory connection" to a crane barge when they removed and stacked the covers of cargo barges so that cargo unloaded from an ocean-going vessel by crane could be loaded onto the cargo barges.[23] 2008 WL 3851574, at *3. As in this case, plaintiffs worked in conjunction with a particular crane barge throughout the day, but all of their duties were on the adjacent cargo barges. *Id.* Furthermore, their only other connection to the crane barge consisted of using its shack for lunch or assisting deckhands with mooring the barge. *Id.* at 5.

Although the particular duties that Jones performed differ from the duties that the plaintiffs had in *Moore*, plaintiff's connection to the derrick barge is no more substantial. When asked at his deposition whether he ever did anything aboard the DENISE M "other than use it as a platform to get into the holds" of the

---

[23] As in this case, Cooper hired the plaintiffs on an as-needed basis from a union hiring hall. *Moore*, 2008 WL 3851574, at *3.

barge, plaintiff responded "no."[24] Jones submits an affidavit wherein he declares that he ate meals on the derrick barge and that he tied and untied lines that secured the cargo barge to the derrick barge.[25] However, undisputed deposition testimony indicates that Jones was not required to eat meals aboard the derrick barge and that he was free to leave for lunch unlike those assigned to maintain and operate the derrick barge.[26] Furthermore, evidence that plaintiff tied lines connected to the derrick barge, that he stored his personal belongings on the derrick barge, and that he stepped onto the derrick barge when exiting the crew boat[27] hardly substantiates plaintiff's connection to the derrick barge. Instead, the evidence shows nothing more than plaintiff's "transitory" connection to the derrick barge.

Accordingly, plaintiff's evidence is not sufficient to permit a reasonable jury to conclude that he had a substantial connection to the Cooper-owned derrick barge.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Cooper's motion for summary judgment is

---

[24] Rec. Doc. No. 17-4, p. 28.

[25] Rec. Doc. No. 17-5, p. 14.

[26] Rec. Doc. No. 15-7, p.7; Rec. Doc. No. 17-3, pp. 26-27; Rec. Doc. No. 17-5, p. 6.

[27] Rec. Doc. No. 17-4, p. 16.

**GRANTED** and that plaintiff's Jones Act claims are **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, February <u>6th</u>, 2009.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**