**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JOHN JONES** | **CIVIL ACTION** |
| **VERSUS** | **No. 08-3879** |
| **COOPER/T. SMITH STEVEDORING COMPANY, INC.** | **Section I/5** |

## ORDER AND REASONS

Before the Court is a motion for summary judgment filed by defendant, Cooper/T. Smith Stevedoring Company, Inc. ("Cooper"), seeking dismissal of the above-captioned matter on the ground that plaintiff cannot maintain his remaining claim against Cooper for vessel negligence under 33 U.S.C. § 905(b). For the following reasons, Cooper's motion for summary judgment is **GRANTED.**

## BACKGROUND

In March, 2008, Cooper hired plaintiff, John Jones ("Jones"), from the Longshoreman Local Union "shapeup" yard in Darrow, Louisiana to assist in unloading cargo from an ocean-going ship, the M/V MASS ENTERPRISE, located offshore in the Mississippi River.[1] The ship's cargo was transferred by the crane of a Cooper-owned derrick barge to an adjacent cargo barge, which was moored to Cooper's derrick barge.[2] Jones was assigned to unhook cargo lifted by the derrick barge crane while he remained in the hold of the

---

[1] Rec. Doc. No. 34-3, para. 3; Rec. Doc. No. 37, p. 1.

[2] Rec. Doc. No. 34-3, paras 3-5; Rec. Doc. No. 37, p. 1.

1

cargo barge.³ According to Cooper, neither the ship being discharged nor the barge where Jones was positioned were owned by Cooper.⁴

On March 15, 2008, Jones was allegedly injured when he was struck by cargo while working aboard the cargo barge.⁵ Jones filed this lawsuit against Cooper pursuant to the General Maritime Law and the Jones Act, alleging that the barge upon which he was working was unseaworthy and that Cooper was negligent in failing to provide a safe place to work, "[f]ailing to avoid striking plaintiff with the crane load," failing to properly supervise the task, "[f]ailing to operate the crane in a reasonably safe manner," "[f]ailing to warn plaintiff of the impending impact," and "[f]ailing to assign properly trained personnel to perform the task at issue."⁶ Following permission by the U.S. Magistrate Judge, Jones amended his complaint on February 6, 2009, adding an alternative claim for vessel negligence under 33 U.S.C. § 905(b) of the Longshore and Harbor Workers' Compensation Act ("LHWCA").⁷

On February 9, 2009, this Court granted Cooper's motion for summary judgment and dismissed his Jones Act claims on the ground

---

³ Rec. Doc. No. 34-3, para. 3; Rec. Doc. No. 37, p. 1.

⁴ Rec. Doc. No. 34-3, para. 9; Rec. Doc. No. 34-7, pp. 2-5.

⁵ Rec. Doc. No. 1, para. 4.

⁶ Rec. Doc. No. 1, para.6.

⁷ Rec. Doc. No. 26.

that Jones could not qualify as a seaman. Cooper now moves to dismiss Jones' sole remaining claim, arguing that Jones cannot maintain a cause of action for vessel owner negligence under § 905(b) because Jones' alleged injury resulted from stevedoring services, i.e., the operation of a crane in unloading cargo, as opposed to any negligence of Cooper as a vessel owner. Jones responds that his injury resulted not just from the negligent operation of the crane, but also from the negligence of agents of the vessel owner.[8]

## **LAW AND ANALYSIS**

### I. **STANDARD OF LAW**

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 266, 274 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Celotex*, 477 U.S.

---

[8]Rec. Doc. No. 37, p. 9.

3

at 323, 106 S. Ct. at 2553, 91 L. Ed. 2d at 274; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986). If, on the other hand, the moving party bears the burden of proof on an issue, it "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot*, 780 F.2d at 1194.

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 211-12 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving

4

party's] favor." *Id.* at 255, 106 S. Ct. at 2513, 91 L. Ed. 2d at 216; *see Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S. Ct. 1545, 1551-52, 143 L. Ed. 2d 731, 741 (1999).

## II. <u>VESSEL OWNER NEGLIGENCE</u>

Under the LHWCA, an employer must pay compensation benefits to a covered employee regardless of whether the employer was at fault. 33 U.S.C. § 904; *Levene v. Pintail Enters., Inc.*, 943 F.2d 528, 531 (5th Cir. 1991). Such compensation is an employee's exclusive remedy against his employer. *Levene*, 943 F.2d at 531. "Section 905(a) affords employers full immunity from tort suits by providing that compensation benefits 'shall be exclusive and in place of all other liability of such employer to the employee...'" *Id.*

"Under 905(b), the same worker may pursue a tort action against the owner of a vessel for acts of negligence." *Id.* However, the language of 905(b) makes it clear that the vessel owner may not be sued when the injury was caused by the negligence of those performing stevedoring services. 33 U.S.C. 905(b); *Id*. at 532.[9] The primary responsibility for the longshoremen's safety rests with the

---

[9]Section 905(b) provides in pertinent part:
> In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel....

5

stevedore. *Robinson v. Orient Marine Co.*, 505 F.3d 364, 365 (5th Cir. 2007) (quoting *Singleton v. Guangzhou Ocean Shipping Co.*, 79 F.3d 26, 28 (5th Cir. 1996)). However, following the United States Supreme Court's decision in *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 101 S. Ct. 1614, 68 L. Ed. 2d 1 (1981), the United States Court of Appeals for the Fifth Circuit recognized limited circumstances where a vessel owner may be liable to a longshoreman injured during stevedoring operations:

> 1) if the vessel owner fails to warn on turning over the ship of hidden defects of which he should have known.
> 2) for injury caused by hazards under the control of the ship.
> 3) if the vessel owner fails to intervene in the stevedore's operations when he has actual knowledge both of the hazard and that the stevedore, in the exercise of obviously improvident judgment, means to work on in the face of it and therefore cannot be relied on to remedy it.

*Robinson v. Orient Marine Co.*, 505 F.3d 364, 365 (5th Cir. 2007) (citing *Pimental v. LTD Canadian Pac. Bul*, 965 F.2d 13, 15 (5th Cir. 1992)).

A vessel owner who conducts its own stevedoring operations and employs longshoremen to conduct such operations is subject to the above-mentioned *Scindia* duties with respect to vessel negligence. *Levene*, 943 F.2d at 532-33; *Pischoff v. Bisso Towboat Co.*, 748 F.2d 300, 302 (5th Cir. 1984). However, "[w]hen an employer acts in a dual capacity as vessel owner, the entity retains its immunity for acts taken in its capacity as an employer, but may still be sued 'qua vessel' for acts of vessel negligence." *Levene*, 943 F.2d at

531 (citing *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 532 103 S. Ct. 2541, 2548, 76 L. Ed. 2d 768 (1983)). "[A] vessel owner acting as its own stevedore is liable only for negligence in its 'owner' capacity, not for negligence in its 'stevedore' capacity.'" *Castorina v. Lykes Bros. Steamship Co.*, 758 F.2d 1025, 1032 (5th Cir. 1985)(quoting *Pfeifer*, 462 U.S. at 530). "This means that the employer is not liable for negligence indiscriminately, but only for negligence specifically attributable to his 'vessel owner' capacity." 1 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 7-10(4th ed.) As such, the capacity in which the employer/vessel owner acts is "extremely important" with respect to recovery under § 905(b). *Levene*, 943 F.2d at 531.

The fact that the vessel owner performs its own stevedoring operations and employs longshoremen does not impose a greater duty of care upon the vessel owner. *Castorina*, 758 F.2d at 1033 ("[T]his duty is neither heightened nor diminished when the longshoreman is employed directly by the vessel."). Nor does the vessel owner's dual function as a stevedore subject it to liability for injuries caused by those performing stevedoring services. *Id.; Durr v. Global Marine, Inc.*, 673 F.2d 740, 740 (5th Cir. 1982); *Cavalier v. T. Smith & Son, Inc.*, 668 F.2d 861, 862 (5th Cir. 1982) (affirming the U.S. District Court's holding that "a longshoreman's suit [against the vessel owner-employer] is barred by the provisions of the LHWCA, however, if the negligence that caused the injury is

7

attributable to members of the vessel's crew who are performing stevedoring services when the plaintiff is injured.").

Instead, courts must "separate the negligence of the shipowner and that of the stevedore, even when the shipowner performs its own stevedoring activities." *Castorina*, 758 F.2d at 1033. The Fifth Circuit explained the danger of blurring the distinction between the negligent acts committed as a vessel owner and the negligent acts committed as a stevedore employer:

> In this situation, the stevedore's knowledge of dangerous conditions that may have arisen during the cargo operations should not be imputed to the shipowner, nor should the shipowner be deemed to know that the stevedore's actions in dealing with such dangers are obviously improvident. To impute this knowledge to a shipowner-employer would be to hold it liable in tort for damages arising from its negligence as stevedore, and effectively to eliminate the exclusivity provisions of sections 905(a) & (b).

*Id.*

### III. **DISCUSSION**

Cooper argues that because Jones' complaint alleges injury resulting from traditional longshoreman activities, i.e., the loading and unloading of cargo with the assistance of the derrick barge's crane, Jones cannot maintain a claim that Cooper was negligent in its capacity as a vessel owner in light of 905(b)'s prohibition against vessel owner liability resulting from stevedoring.[10] Jones contends that his claims are not limited to the

---

[10]The Court notes that Cooper did not own the oceangoing ship from which Cooper was unloading cargo or the cargo barge where Jones was positioned as he unhooked cargo. Cooper did own the derrick barge where the crane was

8

crane operator's negligent acts. Instead, Jones claims that the crane operator, when unloading cargo, used a method different than the longshoremen expected[11] and that agents for Cooper, as the owner of the vessel, failed to exercise reasonable care to prevent his injury. Jones contends that Cooper was negligent because of its failure to adequately supervise the crane operator, its failure to conduct a joint safety meeting with the crane operator and the longshoremen assigned to unhook cargo, and by proceeding with the crane operation in the absence of a flagman who could signal the crane operator.[12]

In light of the fact that § 905(b) only provides for liability against the vessel owner for non-stevedoring injuries, the Court must determine whether Cooper acted in its capacity as owner of the derrick barge or in its capacity as a stevedore employer. It is clear that any negligence by the crane operator in transporting cargo constitutes stevedoring operations for which Cooper as the vessel owner cannot be liable. *Durr*, 673 F.2d at 741; *Moore v. AEP Memco LLC*, No. 07-1353, 07-2650, 07-2760, 2008 WL 3851574, at *6

---

positioned. Rec. Doc. No. 34-7, pp. 2-5; Rec. Doc. No. 37, p. 1.

[11]Rec. Doc. No. 37-8, pp. 4-9; Rec. Doc. No. 37-9, pp. 13-14; Rec. Doc. No. 37-10, pp 2-3, 5. Usually, loads are stacked in rows from the stern to the bow of the barge. Rec. Doc. No. 37-7, p. 17. On the day of the accident, the crane operator decided to fill a gap by placing a load along the wall rather than in the middle of the barge. Rec. Doc. No. 37-8, p. 3. In order to set the load in the gap by the wall, the crane operator had to swing the load into the wall so that it would then drop into place against the wall. *Id.* at pp. 8-14. The load struck Jones when he was positioned at the "pinch-point" between the load and the wall. *Id.* at pp. 12-14.

(E.D. La. Aug. 13, 2008)(Vance, J.); *Bogan v. Barge T-13315B*, 607 F. Supp. 85, 88 (E.D. La. 1985)(Arceneaux, J.)("[T]he Court has no difficulty finding ITO's crane operator was engaged in stevedoring services at the time of the accident.").

With respect to Cooper's negligence as owner of the derrick barge, Jones submits evidence that a Cooper agent, Stephen Taylor, was in the cab of the crane training Jamie Simon, who usually worked as an oiler or utility man, to operate the crane.[13] Jones contends that Taylor failed to adequately supervise Simon and that Taylor failed to instruct Simon to communicate to those unhooking the cargo his new plan for dropping cargo onto the barge.[14] The Court finds no need to make a legal distinction between Cooper's role in connection with its supervision of cargo operations and its role in connection with its cargo operations. Any failure by Taylor to adequately oversee and supervise Simon's operation of the crane arises out of Cooper's capacity as a stevedore employer and not out of Cooper's capacity as owner of the vessel.

Jones also contends that Cooper was negligent in failing to conduct a joint safety meeting where the crane operator and the longshoremen could discuss methods for stacking loads of cargo, changes to procedures for stacking loads, and the associated risks, such as pushing suspended loads. Deposition testimony indicates

---

[13] Rec. Doc. No. 37-7, pp. 7-10.

[14] Rec. Doc. No. 37-7, pp. 7-10.

that Cooper did not conduct a joint safety meeting with both the crane operator and the longshoremen.[15] Instead, a Cooper supervisor conducted a safety meeting on the gangway before the longshoremen were transported to the barge by a crew boat.[16] At the meeting, the supervisor warned against standing under a load and advised the longshoremen to wear hard hats and safety glasses as protection against the overhead bags and any swinging barge covers.[17] Jones also offers an expert report concluding that Cooper's failure to conduct a "Job Safety Analysis" "to determine the hazards of this job and to abate those hazards" contributed to Jones' injury.[18]

Even if Cooper was negligent in failing to conduct a joint meeting to discuss the crane operator's plans for carrying loads and any associated hazards, such negligence occurred in Cooper's capacity as a stevedore employer. Given the focus of the Cooper agent's safety discussion on overhead bags, swinging loads, and the need for hard hats, it is clear to the Court that Cooper conducted the meeting in its capacity as a stevedore employer. There is no indication that Cooper addressed safety issues with respect to the vessel, itself, such as deck safety. Further, Jones' claim that Cooper should have conducted a meeting where the crane operator and

---

[15] Rec. Doc. No. 37-5, p. 21; Rec. Doc. No. 37-7, pp. 11-12; Rec. Doc. No. 37-6, pp. 8-9.

[16] *Id.*

[17] Rec. Doc. No. 37-5, pp. 18-21.

[18] Rec. Doc. No. 37-11, p. 8.

the longshoremen could communicate with each other relates directly to what Cooper should have done in connection with its stevedoring operations and as an employer of longshoremen, not in its capacity as derrick barge owner.

Jones' claim that Cooper should have halted cargo operations due to the absence of a flagman to direct the crane operator also clearly comes within Cooper's capacity as stevedore employer. The Fifth Circuit has previously held that the negligence of a flagman amounted to the negligence of those engaged in stevedoring services, as opposed to vessel negligence and, therefore, a flagman's negligence could not support a claim for negligence against the vessel owner. *Cavalier*, 668 F.2d at 862. Accordingly, any negligence of Cooper in conducting cargo operations without a flagman similarly constitutes stevedore, not vessel, negligence.

Finally, Jones argues that the fact that stevedoring operations were ongoing when the accident occurred does not foreclose Jones' recovery against Cooper as vessel owner. Courts have rejected the "single mission" analysis whereby any longshoring activity would preclude a vessel owner's negligence, instead holding that the inquiry must consider "the particular negligent acts" in order to determine whether a plaintiff's injury resulted from negligence in stevedoring. *Smith v. E. Seaboard Pile Driving, Inc.*, 604 F.2d 789, 795-96 (2d Cir. 1979). In *Smith*, the Second Circuit explained that while all employees may be peripherally

12

involved in a single mission, "supervisory personnel in particular will continue to fulfill their duties as agents of the shipowner, and the negligent discharge of these responsibilities can still result in liability to the vessel." *Id.* at 796 n.5. Nonetheless, "the key issue is whether the shipowner's employees who were at fault committed the negligent acts in their capacity as agents of the vessel on the one hand or as employees performing longshoring...on the other." *Id.* at 795.

Jones cites *Pischoff v. Bisso Towboat Co.*, where the Fifth Circuit followed the Second Circuit's reasoning in *Smith* and held that even though longshoring activities were occurring, the agent supervising the plaintiff acted in his capacity as an agent to the vessel owner because he ordered the plaintiff to hurry repairs to the vessel so that the vessel could be delivered to a customer the next day and the vessel owner could avoid losing money. 748 F.2d 300, 303 (5th Cir. 1984)("When [the supervisor] told [the plaintiff] to hurry up, he was fulfilling a duty as an agent of the shipowner.").

In the instant case, Cooper's agents supervised and directed longshoring operations just as the defendant directed the manner in which the plaintiff conducted repairs in *Pischoff*. However, while the Fifth Circuit found in *Pischoff* that the supervisor's directions to hurry were motivated by the vessel owner's "corporate concern," there is no indication that Cooper's supervisory

personnel were motivated by Cooper's interests as vessel owner when they oversaw cargo operations, failed to conduct a joint safety meeting, and proceeded with cargo operations without a flagman.

Jones also cites *Moore*, where another section of this Court denied summary judgment based on inconclusive evidence as to whether a supervisor's alleged negligence was committed in his capacity as stevedore or in his capacity as an agent for the vessel owner. 2008 WL 3851574, at *7. In *Moore*, a longshoreman's foot became crushed between the covers of barge holds when he was guiding the crane operator in dropping the barge covers. *Id.* at *1. The plaintiff alleged that his injuries were caused by the warped condition of the barge covers and that his supervisor should have stopped the operation until modifications to procedures and equipment could occur. *Id.* at *6. After rejecting the vessel owner's liability based on the crane operator's negligence, the Court found that it was unclear whether the supervisor was negligent in his capacity as vessel owner or in his capacity as stevedore. *Id.* at *6-7.

Although Jones also alleges the negligence of his supervisors, the instant case is distinguishable in that Jones does not allege any negligence directly related to the conditions of the vessel. Unlike Jones, the plaintiff in *Moore* complained of his supervisor's failure to stop operations until modifications were made to the vessel's equipment, i.e. the warped barge covers. *Id.* at *6. Jones

14

does not make any similar allegations that Cooper's supervisory personnel were negligent in handling or responding to unsafe barge equipment. In fact, the Court finds it noteworthy that Jones makes no allegations of negligence based on the conditions of the vessel, its gear, or its equipment. *See White v. Cooper/T. Smith Corp.*, 690 F. Supp. 534, 538 (E.D. La. 1998)(Schwartz, J.)("It is not enough that a vessel be indirectly involved with an accident....").[19]

For the foregoing reasons,

**IT IS ORDERED** that Cooper's motion for summary judgment is **GRANTED** and that Jones' 905(b) claim against Cooper is **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, April 29th, 2009.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[19] Because the Court finds that Cooper was acting in its capacity as stevedore, as opposed to as vessel owner, the *Scindia* duties are not applicable to this matter and the Court need address Jones' argument that Cooper, as vessel owner, was "actively involved" in cargo operations and retained "active control" over the vessel.